STATE OF NORTH CAROLINA
v.
RICHARD MCKINLEY REDMOND, Defendant.
No. COA09-508
Court of Appeals of North Carolina.
Filed December 22, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Barry H. Bloch, for the State.
Don Willey, for defendant-appellant.
STROUD, Judge.
On 5 May 2008, defendant Richard McKinley Redmond was indicted on the charge of obtaining property by false pretenses. On 2 September 2008, defendant was indicted for attaining the status of an habitual felon. The case was tried at the 13 November 2008 Criminal Session of Superior Court, Henderson County. We find no prejudicial error.
The facts relevant to defendant's appeal are as follows: On 8 December 2007, Joyce Pruitt had a car accident in Fletcher, North Carolina. Pruitt testified that she was stopped at a light when she was rear-ended by a vehicle driven by the defendant. Pruitt was given a "green slip" by the investigating police officer which contained the defendant's name, phone number, and insurance information. Pruitt folded the slip and placed it in her wallet.
On 4 January 2008, Pruitt visited the Big Lots store in Hendersonville, North Carolina. Pruitt testified that when she left, she inadvertently left her wallet in a shopping cart in the parking lot. Pruitt's wallet was discovered by Alphia Willis. Willis testified that she found a wallet in a "buggy" next to her car in the parking lot at Big Lots. Upon discovering the wallet, Willis took it inside the store and told an employee about her discovery. Eventually, Willis opened the wallet while under the watch of a Big Lots employee. Inside the wallet, Willis found credit cards with a woman's name on it, and a blue-green piece of paper with a man's name and telephone number on it. Willis called the number on the piece of paper. Willis asked if the man had Pruitt's phone number. The man responded that Pruitt "was hard to keep up with." Willis then told the man about finding Pruitt's wallet at Big Lots in Hendersonville. The man told her he would pick it up. Willis then told the man that she had been told by a Big Lots employee that Pruitt would have to pick up the wallet herself and present identification. Willis asked the man to pass on the message to Pruitt, handed the wallet to a store employee, and left the store.
Norma Wegman, a manager at the Big Lots store, testified that she was working on 4 January 2008 and that a wallet was turned over to her by one of the store employees. Later that day, she received a phone call regarding the wallet. The caller, a woman, told Wegman that she had lost her wallet, could not come in to retrieve it, and was sending a man over to pick it up for her. The caller described the man and gave his name, and Wegman wrote down this information and placed it with the wallet. Joshua Flood, another manager at the Big Lots store, testified that, later that day, he saw the wallet in the cash box along with the note from Wegman. Flood testified that two people came into the store to claim the wallet. The first person was a man that Flood identified at trial as being the defendant. Flood testified that he gave defendant the wallet, and defendant left with the wallet.
Pruitt discovered her wallet was missing a few hours after she lost it. Pruitt immediately called the store and then headed to the store to retrieve her wallet. Upon arriving at the store, she spoke with Flood, but Flood was unable to return her wallet because he had already given the wallet to somebody else. Pruitt then called the police. After the police arrived, Pruitt and Flood observed the surveillance video from the store. After watching the video, Pruitt was unable to identify the man to whom Flood gave her wallet.
Pruitt testified that she had several conversations with the police in the days after her wallet went missing. In one of the conversations, she was asked if she was involved in a car accident in December. Pruitt testified that upon hearing the question, "it all clicked." Pruitt testified that she realized the man in the video, to whom the Big Lots store manager gave her wallet was the "guy from the accident." Pruitt then informed police about the green slip of paper in her wallet, told police she could identify the defendant, and also that the defendant was wearing the same jacket in the video that he wore on the day of the accident.
At trial, while Pruitt was testifying, defendant's counsel cross-examined her regarding her criminal history, her lack of money to pay legal fees to regain custody of her daughter, and her having spoken to an attorney about suing Big Lots. In response, during closing arguments, the prosecutor stated that defendant wanted the jury to focus on the victim, not the defendant. The prosecutor again conceded that the victim had child custody issues, as well as prior convictions, and claimed that defendant sought to "distract" the jury away from the fact that the defendant stole her wallet. The prosecutor then argued:
[THE STATE]: Ladies and gentleman, that distraction wouldn't work because Ms. Pruitt, unlike  unlike the defendant, was able to tell you.
[DEFENDANT'S ATTORNEY]: OBJECTION.
[THE STATE]: She was able to tell you the truth about what happened. She told you, "Yeah, I had two misdemeanor larceny convictions when I was younger."
[DEFENDANT'S ATTORNEY]: OBJECTION.
[THE STATE]: I was 
[THE COURT]: OVERRULED
[THE STATE]:  young and stupid. I told  she told you what a mistake it was. She told you how she pled guilty, how she took her punishment. She told you everything. She put up with scrutiny, she put up with embarrassment and she told you everything that was asked of her. But what does any of that have to do with this anyway? Nothing. It's not relevant at all. Nothing  nothing to do with this case.
After the prosecutor concluded her closing argument, the trial court commented on the record concerning the defendant's objections that occurred during the prosecutor's closing argument:
But the first  during the State's closing argument, the statement was made  I don't remember the full sentence but the sentence began with, "Joyce Pruitt, unlike the defendant, is able to tell you" and the sentence went on, which that could be taken as a direct  a direct reference to the defendant's failure to testify.
Now, it can be taken in another context, also, in that Mr.  that the evidence may tend to show  I can't remember the evidence exactly. Mr. Redmond might have been unable to explain to a law enforcement officer certain things.
But Mr. Foster did object a few seconds after that statement was made. It appears you were reflecting on it, Mr. Foster, I don't know. You might have been objecting to something else. I overruled the objection. I don't know that any curative instruction would be possible in this type of situation if it happens that Mr. Redmond is convicted and the Court of Appeals reviews this. But that's just  that's just the circumstances of that comment.
Defendant was convicted of obtaining property by false pretenses and having achieved habitual felon status and was sentenced to a term of seventy to ninety-three months imprisonment. Defendant appeals.
Defendant's sole argument on appeal is that the trial court erred by failing to give a curative instruction, or declare a mistrial, immediately following the prosecutor's improper comment regarding defendant's exercise of his right not to testify.
After careful review of the record, briefs and contentions of the parties, we find no prejudicial error. Our Supreme Court has stated:
A defendant has the right to refuse to testify under the Fifth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, and under Article I, Section 23 of the North Carolina Constitution. A defendant's exercise of this right may not be used against him, and any reference by the State to a defendant's failure to testify violates that defendant's constitutional rights. A statement that may be interpreted as commenting on a defendant's decision not to testify is improper if the jury would naturally and necessarily understand the statement to be a comment on the failure of the accused to testify. However, a prosecutor's reference to a defendant's failure to testify does not mandate an automatic reversal but requires the court to determine whether the error is harmless beyond a reasonable doubt.
State v. Mitchell, 353 N.C. 309, 326, 543 S.E.2d 830, 840-41 (citations omitted), cert. denied, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001).
Assuming arguendo that the prosecutor's comment in the present case was an improper comment on defendant's decision not to testify, we conclude that any purported error was harmless beyond a reasonable doubt. In the instant case, defendant was positively identified by multiple witnesses as being the person who was given the wallet by Flood. First, Flood, as well as an associate in the store, Emma Ruff, identified the defendant at trial as being the man who claimed the wallet. Second, the victim, Pruitt, testified that the man she observed on the surveillance video receiving the wallet from Flood was the defendant. Finally, the jury was able to view the surveillance video during the trial and make its own decision whether the man seen claiming the wallet was the defendant. Accordingly, in light of the overwhelming evidence of defendant's guilt, we find no prejudicial error.
No prejudicial error.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).